# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **CORNELIOUS D. YOUNG** | * | **CIVIL ACTION NO.  14-0810**<br>**Section P** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **DEPUTY REEVES, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion for summary judgment [doc. # 34] filed by defendants, Ray Reeves, John Lewis, Jr., and Jake Laurence (apparently incorrectly sued as "Deputy Lake").[1]  For reasons stated below, it is recommended that defendants' motion for summary judgment [doc. # 34] be GRANTED, and that plaintiff's complaint be DISMISSED, in its entirety.

## Background

On April 15, 2014, pro se plaintiff Cornelious D. Young, who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 against various officers/deputies at the Bayou Dorcheat Corrections Center ("BDCC").[2]  Young complains that, while at the BDCC, certain deputies there refused to believe his complaint of back pain, denied him medical attention, and used excessive force against him.

---

[1]  "Deputy Lake" filed an answer to the suit.  *See* Answer.  However, Jake Laurence joined in the motion for summary judgment.  In any event, "Deputy Lake" is entitled to summary judgment on the same basis as the other movants.  *See* discussion, *infra*.

[2]   At the time that he filed suit he was incarcerated at the Springhill City Jail, and is now at the Claiborne Parish Detention Center.

On February 9 and 19, 2015, plaintiff amended his complaint pursuant to court order. [doc. #s 18-20].  On April 20, 2015, the court completed its initial screening pursuant to 28 U.S.C.§§ 1915 and 1915A, and ordered service on Deputies Reeves, Lewis, and Lake (a/k/a Laurence), via U.S. Marshal.  (April 20, 2015, Mem. Order [doc. # 21]).[3]  On July 13, 2015, all three defendants answered the complaint.  (Answer [doc. # 24]).

On March 18, 2016, defendants, Reeves, Lewis, and Laurence/Lake, filed the instant motion for summary judgment.  Plaintiff filed his response to the motion on May 11, 2016. Thereafter, defendants filed a motion to strike plaintiff's response.[4]  Plaintiff did not file a response to the motion to strike, and the time to do so has lapsed.  Thus, the matter is ripe.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

---

[3]  In so doing, the court observed that in plaintiff's amended pleadings, he restated his complaints against defendants, Reeves, Lewis, and Lake/Laurence, but alleged no actionable fault against defendants, Cody Burton, Sammy Holder, or Deputy Wills.  He also did not identify the other unknown or unnamed deputies employed at the BDCC.  The court further noted that the Webster Parish Sheriff's Office was not a juridical person capable of being served.  Accordingly, the court did not order service on Burton, Holder, Wills, or the Webster Parish Sheriff's Office.

[4]  Defendants' motion to strike is addressed by separate order.

2

"[A] party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving

party may meet its burden to demonstrate the absence of a genuine issue of material fact by

pointing out that the record contains no support for the non-moving party's claim." *Stahl v.*

*Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-

movant is unable to identify anything in the record to support its claim, summary judgment is

appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of

the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at

255.  "The court *need* consider only the cited materials, but it *may* consider other materials in the

record." Fed.R.Civ.P. 56(c)(3) (emphasis added).  While courts will "resolve factual

controversies in favor of the nonmoving party," an actual controversy exists only "when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d

1069, 1075 (5th Cir. 1994) (en banc).  There can be no genuine dispute as to a material fact when

a party fails "to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*,

477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond

peradventure[5] all of the essential elements of the claim . . . to warrant judgment in [its] favor."

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must

affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*,

1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Law

a)   Excessive Force and Cognizable Physical Injury

As a convicted inmate, plaintiff's claim for excessive force is analyzed under the Eighth

Amendment's prohibition against cruel and unusual punishment.[6]  When a prison official is

accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and

Unusual Punishments Clause, the core judicial inquiry is "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson v. McMillian*,  503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) (citing *Whitley v. Albers*, 475

U.S. 312, 106 S.Ct. 1078 (1986)); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).

However, not every malevolent touch by a prison guard gives rise to a federal cause of action.

*Id*. (citation omitted).  The Eighth Amendment also does not protect against "de minimis" use of

---

[5]  I.e., beyond doubt.

[6]  On January 6, 2014, Young appeared in Webster Parish District Court, withdrew his
plea of not guilty, and entered a plea of guilty.  (Attach. to Affidavit of Delores Dooly, MSJ, Exh
A, pg.8).

Nonetheless, even if Young were still a pretrial detainee during the relevant period thus
deriving his rights from the due process clause of the Fourteenth Amendment, the inquiry
remains the same.  *Vanderburg v. Harrison Cty., Miss. ex rel. Bd. of Supervisors*, 716 F. Supp.2d
482, 486 (S.D. Miss.2010) (standard for analyzing an excessive force claim under the Fourteenth
Amendment is the same as the Eighth Amendment standard); *Gibbs v. Grimmette*, 254 F.3d 545,
548 (5th Cir.2001) (no significant distinction between pretrial detainees and convicted inmates
concerning basic human needs such as medical care).

4

physical force, so long as the use of force is not of a sort "repugnant to the conscience of

mankind." *Id.* (citation and internal quotation marks omitted).[7]  Though

> [t]he focus of this standard is on the detention facility official's subjective intent
> to punish, intent is determined by reference to the well-known *Hudson* factors —
> the extent of injury suffered, the need for application of force, the relationship
> between that need and the amount of force used, the threat reasonably perceived
> by the responsible officials, and any efforts made to temper the severity of a
> forceful response."

*Cowart, supra* (citations and internal quotation marks omitted).

b)    Inadequate Medical Care

 To establish liability for inadequate medical care under the Eighth Amendment, an

inmate must adduce facts which "clearly evince" a serious medical need and the prison official's

deliberate indifference to it.  *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation

omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical

care to a prisoner means that:  (1) the official was aware of facts from which an inference of

substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and

(3) the official's response indicates that the official subjectively intended that harm occur.

*Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001).   "[T]he failure to

alleviate a significant risk that [the official] should have perceived, but did not is insufficient to

---

[7]  The PLRA further provides that "[n]o [f]ederal civil action may be brought by a
prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury
suffered while in custody without a prior showing of physical injury."  42 U.S.C.A. § 1997e(e).
The Fifth Circuit has equated § 1997e(e)'s "physical injury" requirement with the standard used
under the Eighth Amendment; that is, an injury that is more than de minimis, but not necessarily
significant.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  Nonetheless, "the extent of
the injury may supply insight as to the amount of force applied."  *Cowart v. Erwin*, 2016 WL
4784010, ___ F.3d ____, *5 (5th Cir. Sept. 13, 2016) (citation omitted).

show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  "[A] delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm." *Gregory v. McKennon*, 2011 WL 2473714 (5th Cir. June 22, 2011) (unpubl.) (citation and internal quotation marks omitted).

## Analysis

a)      Plaintiff's Allegations

In his unverified complaint, as twice amended, plaintiff alleged that he was housed at the BDCC on March 8, 2014.  On that date, at approximately 6:30 a.m., Deputy Lake approached Young's cell to give him medication.  Young was lying on the floor and advised Lake that he could not get up to approach the bars because of lower back pain.  Young also told Lake that he needed medical attention.  Lake replied that he would note that Young refused his medication.

At approximately 7:30 a.m., Sgt. Reeves approached Young's cell and ordered him to stand and take his medication.  Young attempted to rise but could not.  Reeves then entered the cell and threatened to Mace and/or Taze Young.  Reeves eventually grabbed Young by the collar and dragged him screaming in pain from the cell to the day room where he handcuffed him before continuing to drag him down the hallway.

Unidentified deputies arrived with a wheel chair, dumped Young in the chair, and then

wheeled him off to the holding cell.  Once in the cell, Young pressed the intercom button to summon medical assistance.  Deputy Lewis went to the holding cell and commanded Young to stand up and walk.  Young explained to Lewis that his lower back was "locked-up," but Lewis grabbed Young by his uniform and pulled him off the bench onto the floor and dragged him out of the cell.  Lewis threatened plaintiff with Mace, then took his blood pressure and pulse and pronounced him fine to the other deputies.

Lewis offered Young his medication but demanded that he arise and walk.  When Young explained that he could not do so, Lewis marked it as a refusal.  Lewis later returned with Young's meal, but instructed the kitchen worker to place the tray atop the sink so Young would have to walk across the cell to retrieve it.  Lewis marked Young as having refused his tray.

Young continued to press the intercom to summon medical assistance but heard only rock music coming from the speaker.  That afternoon, deputies walked past Young's cell, screaming his name and pounding on the cell door.

On March 17, 2014, Young submitted a grievance concerning these events.  On March 27, 2014, he was transferred to the Springhill City Jail.  Young did not receive x-rays, but eventually received flexeril, ibuprofen, and a pain relief cream.

In his response to defendants' motion, plaintiff maintained his version of events, and stated that he was subpoenaing the video surveillance footage for the date and time at issue.  However, there is no indication that plaintiff ever requested the video surveillance footage from defendants (or petitioned the court for a subpoena), and, in any event, the discovery deadline has long since lapsed.  *See* April 20, 2015, Mem. Order [doc. # 21].  Furthermore, plaintiff's response is neither sworn, nor made under penalty of perjury.  In fact, it is not signed at all.

In short, plaintiff's statements in his unverified complaint, as twice amended, and in his unsworn response do not constitute competent summary judgment evidence to be considered by the court in response to defendants' motion.  *See Moore v. True Temper Sports, Inc.*, 523 F. App'x 280 (5th Cir. 2013) (citation omitted).  The court emphasizes that in response to a properly supported motion for summary judgment, the opposing party cannot meet his burden by relying on the allegations in his pleadings or on unsubstantiated assertions.  *Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012) (citation omitted).

b)      <u>Defendants' Uncontested Facts</u>

In contrast, defendants' motion for summary judgment is supported by affidavits from Deputy Delores Dooley, Exh. A; Nurse Sherry Bagwell, Exh. B; Deputy Jake Laurence, Exh. C; Deputy Ray Reeves, Exh. D; Deputy John Lewis, Jr., Exh. E; and Deputy Jason Butler, Exh. F. (Defs. MSJ [doc. # 34]).  Defendants incorporated this evidence into their Statement of Uncontested Facts, which plaintiff did not controvert through his own statement of material facts supported by competent summary judgment evidence.  Accordingly, defendants' statement of material facts is deemed admitted,[8] and substantially incorporated herein, as follows:

1.      Young was arrested on September 28, 2013, and taken to the BDCC where he was booked into the Webster Parish Jail.  At that time, he was charged with Unauthorized Entry (La. R.S. 14:62.4), Criminal Trespass (La. R.S. 14:63), Criminal Property Damage (La. R.S. 14:56), and Resisting By Flight (La. R.S. 14:108).  *See* Exhibit A, pg. "Bayou Dorcheat 11."

2.      Two days later, after some investigation had been conducted, he was booked into the BDCC on additional charges of Felony Theft of Goods (La. R.S. 14:67.10 (B1)), Simple Battery (La. R.S. 14:35), and Trespassing (La. R.S. 14:63).  (Exh A, at 12).

_____

[8]  Fed.R.Civ.P. 56(e)(2) and LR 56.2 (material facts in the moving party's statement are deemed admitted unless controverted by non-movant's statement).

3.      After being booked into custody, Young completed an inmate medical screening and reported that he (1) took blood pressure medication and (2) had ear, nose and throat issues.  (Exh B, at 35).

*          *          *

5.      After a period of time at BDCC, Young was transferred to the Bossier Parish Maximum Security Prison.  (Exh A at 6-7).

6.      On March 7, 2014, he was transferred back to BDCC.  At that time, he completed another Inmate Health Screening Form.  The only medical condition he listed was high blood pressure, noting that he took Clonidine for the same.  He specifically noted that he was not currently hurt or injured.  He made no mention of any back pain, pain relievers, or anti-inflammatories.  (Exh B, at 23).

7.      On the morning of March 8, 2014, Young did not ask Deputy Laurence for medical attention.  *See* Exhibit C (Affidavit of Deputy Laurence) at ¶¶ 5-7.  If he had requested medical treatment, Deputy Laurence would have provided him with a Medical Request form, the same form that Young had filled out many times before.  (Exh C at ¶¶ 5-7).  In addition, if there was no deputy present when Young wanted to make a request, Young could have pushed the intercom button and summoned a guard to provide him with that form.  (Exh C at ¶ 15).  At no time did Deputy Laurence refuse or ignore any request for medical treatment by Young.  (Exh C at ¶ 14).

8.      Deputy Reeves did not threaten or use force on Young in an effort to compel him to take his medications.  (Exh D at ¶¶ 5-7).  That is, the incident described by Young in his complaint did not occur.  (Exh D at ¶ 8).

9.      Neither Deputy Reeves nor Deputy Lewis grabbed Young by his collar and dragged him anywhere, including in or out of a call or down a hall.  (Exh D at ¶¶ 7-8; Exh E at ¶¶ 5 & 8).

10.     The guards are trained that if an inmate asks for medical attention they are to provide them with the Medical Request form to fill out.  (Exh E at ¶¶ 9-14).  This form is then placed in location that the nurse on duty can access.  (Exh E at ¶¶ 9-14).

11.     The food service staff serves the trays of food and puts them in a standard location by the cell door.  (Exh E at ¶ 6).  Deputy Lewis never deprived Young of food or made it more difficult for him to eat.  (Exh E at ¶ 6).

Deputy Lewis never ignored Young's calls on the intercom for help or played rock music over the intercom. (Exh E at ¶ 7).

12.   Despite Young's proclivity for filing Grievance Requests and Medical Requests, he did not file one either the day of the alleged incident or the two following days, i.e., March 8-10, 20142. On March 11, 2014, he did file a Medical Request. (Exh B at 22).

13.   In his March 11, 2014, request, Young stated that his "lower back is in severe pain sometimes I can't walk or in pain so bad it kills me to move I really need medical attention bad to be examine I believe it's a pitch [sic] nerve or my pelvis which even one it is it's not good I'm in too much pain even to raise my legs it hurts really bad." (Exh B at 22).

14.   Nurse Bagwell saw Young that same day. (Exh B at 22 & ¶¶ 14-15). Nurse Bagwell specifically noted that Young's gait was normal, and he did not appear to be in any pain. (Exh B at ¶ 16). In addition, Young denied any radiation, and his muscles were flaccid. (Exh B at ¶ 17). He was able to bend over. (Exh B at ¶ 18).

15.   Young reported to Nurse Bagwell that he had been receiving Ibuprofen 600 mg on a daily basis when he was at Bossier Maximum Security Facility. (Exh B at ¶ 19). However, Nurse Bagwell called Bossier Max and the nurse there said that he was not receiving Ibuprofen on a regular basis. (Exh B at ¶ 20). Despite his misrepresentations and lack of objective evidence of injury, Nurse Bagwell nonetheless provided Young a plan whereby he would receive Ibuprofen 600 mg daily for two weeks, Flexeril 10 mg at night for a week, and that he would follow up with a doctor if his pain persisted. (Exh B at 22). After his March 11, 2014, visit with the nurse, Young did not submit any additional Medical Requests pertaining to his back. (Exh B. at 25).

16.   Jason Butler was a Webster Parish Deputy on the date of the incident at issue. One of Butler's jobs was in the Internal Affairs section. *See* Exhibit F (Butler Affidavit) at ¶ 2. He was tasked with reviewing the video recordings of the various sections of the BDCC and determining whether any needed to be saved, or if there were any issues caught on video that needed to be addressed. (Exh F at ¶ 3).

17.   Butler reviewed all video possibly related to Young's complaints in the suit at issue. (Exh F at ¶ 5). There was no evidence that Deputy Laurence, Sargent Reeves, or Deputy Lewis, Jr., handled Young roughly. (Exh F at ¶ 6). There was no evidence Deputy Laurence, Sargent Reeves, or Deputy

10

Lewis, Jr., or any other jail personnel, grabbed Young by his collar or any other part of his body or clothing and dragged him out of a cell or down the hall.  (Exh F at ¶ 7).  There was no evidence Deputy Laurence, Sargent Reeves, or Deputy Lewis, Jr., or any other jail personnel, abused, tortured, or treated Young in a rough manner.  (Exh F at ¶ 8).  There was no evidence Deputy Laurence, Sargent Reeves, or Deputy Lewis, Jr., or any other jail personnel, denied Young medical treatment.  (Exh F at ¶ 9).

18.    At times, Young would claim to have information that could be helpful to law enforcement officials, which Butler was also required to investigate. (Exh F at ¶¶ 11-16).  Each time Butler investigated one of Young's claims, he determined that it was without merit and that Young had fabricated the claim.  (Exh F at ¶¶ 11-16).

(Defs. Statement of Uncontested Facts).

c)    <u>Discussion</u>

The evidence adduced by defendants remains uncontroverted by plaintiff.  Under these circumstances, the court is compelled to conclude that no reasonable trier of fact could find that the incident(s) alleged by plaintiff actually occurred, and consequently, that the actions of the corrections officers were excessive or objectively unreasonable.  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party).  Stated differently, based on the evidence presented, a reasonable jury[9] could not return a verdict in favor of plaintiff on his claim for excessive force.  *Id.*  (citation omitted).[10]

---

[9]  In this case which is to be tried as a bench trial, the trier of fact is the court.

[10]  The court reiterates that "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations . . . to get to [trial] without any significant probative evidence tending to support the complaint. " *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citations and internal quotation marks omitted).  Furthermore, "a district court has no obligation to provide a pro se litigant with particularized instructions on the requirements and consequences of summary judgment."  *Stingley v. Den-Mar, Inc.*, 347 Fed. Appx. 14, 20 (5th Cir. Sept. 1, 2009) (unpubl.) (citation omitted).

11

Similarly, the uncontroverted summary judgment record confirms that plaintiff received prompt medical treatment on those occasions that he submitted a medical request form.[11] Moreover, in response to defendants' motion, plaintiff did not come forward with any competent summary judgment evidence to establish that any served defendant was personally responsible for any alleged misdiagnosis or delay in treatment.  A defendant's "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted).  For a delay in medical care to be actionable, there must be deliberate indifference, which results in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Valera v. Thomas*, 205 Fed. Appx. 306, 2006 WL 3311069 (5th Cir. 2006) (jail's policy of confiscating prescription medication upon intake did not violate constitutional rights where there was no injury).  Plaintiff has not made the requisite showing here.  As a result, the court necessarily finds that no reasonable trier of fact could find that any defendant was deliberately indifferent to any serious medical need.

d)    Qualified Immunity

Defendants also invoke the affirmative defense of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).

---

[11] Continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992).

When a defendant invokes qualified immunity, the burden shifts to plaintiff to establish that the defense is inapplicable.  *Id*.  (citation omitted).  Plaintiff's burden is two-pronged.  *Id*.  First, he must demonstrate that defendants violated a constitutional right under current law.  *Id*.  "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (*citing Pearson v. Callahan*, 808 U.S. 2009, 129 S.Ct. 808  (2009)).

Having determined that the individual defendants did not violate plaintiff's constitutional rights, *see* discussion, *supra*, analysis of the qualified immunity defense is unnecessary.  *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir.2009).

e)      Webster Parish Sheriff's Office is not a Proper Party Defendant

Under Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be determined by the law of the state in which the district court is held," i.e., Louisiana.  To enjoy the capacity to be sued under Louisiana law, an entity must qualify as a "juridical person."  *Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d Cir.2006) (citations omitted).  This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Art. 24.

The courts hold uniformly that sheriff's *offices* or sheriff's *departments* (as opposed to the sheriff him or herself) are not juridical entities capable of being sued.  *Sipes v. City of Monroe*,

Civ. Action No. 11-1668, 2013 WL 1282457, at *3 (W.D. La. Mar. 28, 2013) (collecting cases).

Accordingly, the Webster Parish Sheriff's Office cannot be sued and must be dismissed, with

prejudice.  *See Darby v. Pasadena Police Dept.*, 939 F.2d 311 (5th Cir. 1991) (affirming district

court's dismissal of a defendant, with prejudice, because it could not be sued as an independent

entity).

f)      Unserved Individual Defendants

Defendants, Cody Burton, Sammy Holder, Deputy Wills, and other "unknown or

unnamed" BDCC deputies did not join in the present motion – no doubt, at minimum, because

they were never served.  Nonetheless, they are entitled to summary judgment on the same basis

as the moving defendants.  *Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (where

defending party establishes that plaintiff has no cause of action, the defense generally inures to

the benefit of a non-appearing co-defendant).[12]  Furthermore, a court's decision to withhold

service for a defendant(s) after screening the case under 28 U.S.C. § 1915A, is an implicit

determination that plaintiff has no cognizable claims against that defendant(s).  *Sama v.*

*Hannigan*, 669 F.3d 585, 589 (5th Cir. 2012).

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that defendants' motion for summary judgment [doc. # 34] be

_____

[12]  The court may grant summary judgment *sua sponte* so long as the adverse party
receives adequate notice and a reasonable time to respond.  Fed.R.Civ.P. 56(f)(1); *Stingley v.*
*Den Mar Inc.*, 2009 WL 2762374, *3 (5th Cir. Sept. 1, 2009) (unpubl.) (citing *inter alia*, *Love v.*
*Nat'l Med. Enters.*, 230 F.3d 765, 770-71 (5th Cir.2000)).  The instant report and
recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1
(W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

GRANTED, and that plaintiff's claims against defendants, Ray Reeves, John Lewis, Jr., and Jake Laurence/Deputy Lake, plus the Webster Parish Sheriff's Office, Cody Burton, Sammy Holder, Deputy Wills, and other "unknown or unnamed" BDCC deputies, be DISMISSED, with prejudice.  Fed. R. Civ. P. 56.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 11th day of October 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE